

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

ENTERED
04/23/2020

| | | |
|---|---|---|
| IN RE: | § | |
| ANITA IVISON | § | **CASE NO: 13-37732** |
|     Debtor | § | |
| | § | **CHAPTER 7** |
| | § | |
| **ANITA IVISON; aka KANZLER,** *et al* | § | |
|     Plaintiffs | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 15-3001** |
| | § | |
| **INTERNAL REVENUE SERVICE,** | § | |
| **UNITED STATES OF AMERICA,** *et al* | § | |
|     Defendants | § | **Judge Eduardo V. Rodriguez** |

## <u>MEMORANDUM OPINION</u>

Section 505 of the Bankruptcy Code confers broad authority on a bankruptcy court to determine a debtor's tax liability before the debtor filed for bankruptcy.  A bankruptcy court's determination of certain tax liabilities also affects whether such claims may be dischargeable.  In the case sub judice, plaintiffs seek determination and dischargeability of certain tax liabilities.

Anita Ivison,[1] James Ivison, ("*Plaintiffs*") and Specialized Hydraulic Services, Inc. ("*SHS*") originally filed separate adversary proceedings against the Internal Revenue Service United States of America, and the United States of America (IRS) (hereinafter referred to as "*IRS*") to determine the proper amounts of federal income taxes, and payroll tax and civil penalty liabilities.  Shortly thereafter, the adversary proceedings were transferred and consolidated before the Court.  After approving a stipulation between SHS and the IRS and dismissing SHS's claims, trial was held.

In consideration of the arguments of counsel, all evidence in the record, credibility of the

---

[1] Now known as Anita Craymer, but for purposes of this Memorandum Opinion will be identified as Anita Ivison. *See* ECF No. 110 at 6.

witnesses, and relevant case law, the Court finds that: James Ivison's aggregate Trust Fund Recovery Penalty liability for the tax quarters ending March 31, 2011, June 30, 2012, September 30, 2012, and March 31, 2013 through December 31, 2013 is determined to be $566,373.77 and is not dischargeable pursuant to 11 U.S.C. § 523(a); James Ivison's individual federal income tax liability for tax year 2011 is determined to be $308,750.87 and is not dischargeable pursuant to 11 U.S.C. § 523(a); Anita Ivison's aggregate Trust Fund Recovery Penalty liability for the tax quarters ending March 31, 2011, June 30, 2012, September 30, 2012, and March 31, 2013 through December 31, 2013 is determined to be $566,303.77 and is not dischargeable pursuant to 11 U.S.C. § 523(a); Anita Ivison's individual federal income tax liabilities are determined to be $308,750.87 for tax year 2011, $6,238.00 for tax year 2012, and are not dischargeable pursuant to 11 U.S.C. § 523(a).

## I.    FINDINGS OF FACT

The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

### a. Background History

During 2013, Plaintiffs owned two Subchapter S corporations: SHS and Specialized Pipe Services, Inc. ("*SPS*"), which they each held a 50% interest in.[2]   The events that precipitated Plaintiffs and SHS' bankruptcy filings were significant tax assessments made by the Internal Revenue Service ("*IRS*") against them for income tax liabilities, and payroll tax and civil penalty

---

[2] Defs.' Ex. 14 at 203–04; ECF No. 110. at 19.

liabilities.

Anita Ivison commenced her underlying chapter 7 proceeding on December 17, 2013 and received her discharge March 18, 2014.[3]  Ms. Ivison's chapter 7 case was closed on October 22, 2014 and then reopened on December 22, 2014 for purposes of instituting the above-captioned adversary proceeding.[4]  Anita Ivison filed her adversary proceeding on January 2, 2015.[5]

James Ivison commenced his underlying chapter 7 proceeding on December 17, 2013 and received his discharge on April 1, 2014.[6]  On April 1, 2014, the IRS filed a proof of claim in James Ivison's bankruptcy proceeding, totaling $1,542,049.05.[7]  However the IRS was only paid $6,868.80 on its unsecured priority claim.[8]  A final decree was signed on May 10, 2017, closing the case.[9]  Seven days later, James Ivison filed a second chapter 7 bankruptcy petition, which was converted to a chapter 11 on October 25, 2017.[10]  On November 28, 2017, the IRS filed a proof of claim in James Ivison's second bankruptcy proceeding, totaling $2,471,191.61.[11]  However, James Ivison's chapter 11 bankruptcy was dismissed on December 12, 2017, with no distributions being made to creditors.[12]  James Ivison filed his adversary proceeding on January 21, 2015.[13]

Lastly, SHS commenced its chapter 7 bankruptcy case on January 24, 2014.[14]  SHS filed its adversary proceeding on January 21, 2015.[15]  On February 19, 2015, the Court transferred

---

[3] *See* Case No. 13-37732.
[4] *See generally* Case No. 13-37732, ECF No. 1.
[5] ECF No. 1.
[6] *See* Case No. 13-37740.
[7] *See* Case No. 13-37740, Claim No. 6.
[8] *See* Case No. 13-37740, ECF No. 61.
[9] *See* Case No. 13-37740, ECF No. 62.
[10] *See* Case No. 17-80154, ECF Nos. 1, 18.
[11] *See* Case No. 17-80154, Claim No. 2.
[12] *See generally* Case No. 17-80154.
[13] *See* Case No. 15-3016.
[14] *See generally* Case No. 14-30487.
[15] *See* Case No. 15-3017.

James Ivison and SHS's adversary proceedings and consolidated them with the above-captioned adversary proceeding.[16]

Plaintiffs and SHS' original claims set forth in the consolidated adversary proceedings are:

1.  tax determination on behalf of James and Anita Ivison pursuant to 11 U.S.C. § 505(a) for tax years 2006 through 2013, including all penalties, interest, and additions thereto, and tax determination of SHS's prepetition federal income tax liability, miscellaneous penalty, and payroll tax labilities for tax years 2007 through 2014;

2.  temporary injunctive relief for James Ivison pursuant to 11 U.S.C. § 362(a); and

3.  determination of dischargeability for James and Anita Ivison under 11 U.S.C. § 523(a).[17]

On February 20, 2015, the Court reinstated the automatic stay, pending adjudication of the underlying adversary proceeding.[18]  And on August 1, 2017, the Court approved a stipulation between the IRS and SHS, allowing the IRS's October 8, 2014 amended proof of claim filed in SHS's bankruptcy case in its entirety, and dismissing SHS as a party to this adversary proceeding.[19]  At trial, the parties stipulated that James and Anita Ivison's individual liability for tax years 2006 through 2010, and 2013 is zero, and that the liability for tax year 2012 as to Anita Ivison only is $6,238.00.[20]  After reviewing the record, there are three remaining issues for the Court to decide, to wit:

1.  Whether Plaintiffs are liable for tax year 2011 federal individual income taxes and if so, in what amount;

2.  Whether Plaintiffs are liable for Trust Fund Recovery Penalty liabilities for tax years 2011 and 2012, and if so, in what amount; and

3.  Whether Plaintiffs' taxes are dischargeable.

**b.  The Federal Tax Claims**

For illustration, the Court has crafted two separate charts—for James and Anita Ivison—

---

[16] ECF No. 12.
[17] ECF No. 1.
[18] *See* Case No. 15-3016, ECF No. 8.
[19] ECF No. 56.
[20] *See* ECF No. 110 at 14 – 17, 59.

which summarize the disputed tax year amounts:

| CHART A JAMES IVISON | | | |
|---|---|---|---|
| Year | Individual Federal Income Amount Due | Tax Period | Trust Fund/Civil Penalty & Federal Tax Lien Amount Due |
| 2011 | $308,750.87[21] | March 2011 | $56,717.51[22] |
| 2012 | $0.00 | June 2012 | $74,520.02[23] |
| 2013 | $0.00 | September 2012 | $96,533.77[24] |
| | | March 2013 | $14,376.96[25] |
| | | June 2013 | $140,359.62[26] |
| | | September 2013 | $120,257.65[27] |
| | | December 2013 | $63,608.24[28] |
| | | | |
| | | | |
| Total | $308,750.87 | | $566,373.57 |

| CHART B ANITA IVISON | | | |
|---|---|---|---|
| Year | Individual Federal Income Amount Due | Tax Period | Trust Fund/Civil Penalty & Federal Tax Lien Amount Due |
| 2011 | $308,750.87[29] | March 2011 | $56,647.51[30] |
| 2012 | $6,238.00 | June 2012 | $74,520.02[31] |
| | | September 2012 | $96,533.77[32] |
| 2013 | $0.00 | March 2013 | $14,376.96[33] |
| | | June 2013 | $140,359.62[34] |
| | | September 2013 | $120,257.65[35] |

---

[21] Defs.' Ex. 35.
[22] Defs.' Ex. 11 at 148.
[23] *Id.* at 152.
[24] *Id.* at 156.
[25] *Id.* at 160.
[26] *Id.* at 164.
[27] *Id.* at 168.
[28] *Id.* at 172.
[29] Defs.' Ex. 35.
[30] Defs.' Ex. 9 at 112.
[31] *Id.* at 117.
[32] *Id.* at 122.
[33] *Id.* at 127.
[34] *Id.* at 132.
[35] *Id.* at 137.

| | | December 2013 | $63,608.24[36] |
|---|---|---|---|
| **Total** | $314,988.87 | | $566,303.77 |

### c. Trial

Trial was initially conducted on November 28, 2018, then continued to and concluded on September 24, 2019.[37] At trial, the parties stipulated to the following, either through oral agreement, testimony, or documentary evidence:

1. Plaintiffs are "Responsible Persons" for purposes of the Trust Fund liabilities assessed against them.[38]

2. Plaintiffs were officers, board members, and 50% shareholders of SHS until its bankruptcy filing on January 24, 2014.[39]

3. James Ivison's estimated compensation received during the period in issue was $150,000.[40]

4. James Ivison had the authority to determine which SHS creditors were paid, participated in overseeing the day-to-day operations of SHS, and was authorized to hire and fire employees, enter into contracts, and to sign checks on SHS's behalf.[41]

5. Anita Ivison was authorized to sign checks on SHS's behalf.[42]

6. Anita Ivison was authorized to hire and fire SHS employees.[43]

7. James and Anita Ivison signed checks or authorized payments for SHS's payees (other than the IRS) after they knew that SHS had unpaid federal withholding taxes.[44]

8. Either James or Anita Ivison signed SHS's payroll returns.[45]

9. James Ivison became aware of SHS's unpaid payroll taxes during mid-2011.[46]

---

[36] Id. at 142.
[37] Trial was initially continued to January 15, 2019, but the Court entered an Order continuing the trial in light of lapse of appropriations. See ECF Nos. 115, 117, 119.
[38] ECF No. 110 at 91.
[39] Defs.' Ex. 14 at 177.
[40] Id. at 178.
[41] Defs.' Ex. 15 at 189.
[42] Id. at 187–88.
[43] Id. at 189–90.
[44] Id. at 188.
[45] Id. at 190.

10. James Ivison's response was to give Rose Paredes power of attorney "to work with the IRS to ensure that an installment agreement was reached as to any unpaid taxes, and future payroll tax deposits were timely made.[47]"

11. No payments, credits, or abatements have been made against any of Plaintiffs' individually assessed Trust Fund liabilities.[48]

12. A $22.00 fee and collection cost was assessed on September 22, 2014 against Anita Ivison for the Trust Fund liability associated with the tax quarter ending March 30, 2011.[49]

13. A $92.00 fee and collection cost was assessed on November 10, 2014 against James Ivison for the Trust Fund liability associated with the tax quarter ending March 30, 2011.[50]

14. SHS's Employer's Quarterly Federal Tax Returns (Form 941) for the tax periods ending April 30, 2012, September 30, 2012, and March 31, 2013 through December 31, 2013 all contain what purports to be James Ivison's signature as a SHS officer.[51]

15. SHS's Employer's Quarterly Federal Tax Returns (Form 941) for the tax periods ending April 30, 2012, September 30, 2012, June 30, 2013, September 30, 2012 and December 31, 2013 reflect balances due.[52]

16. The return for March 31, 2013 and the return for the tax quarter ending June 30, 2013 are the only returns that reflect any deposits.[53]

17. James Ivison admits he signed the returns for the periods ending September 30, 2013 and December 31, 2013.[54]

18. Anita Ivison's 2012 individual income tax liability is $6,238.00.[55]

## II.    CONCLUSIONS OF LAW

### a.    Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its

---

[46] Defs.' Ex. 14 at 177.
[47] *Id.*
[48] Defs.' Exs. 9, 11.
[49] Defs.' Ex. 9.
[50] Defs.' Ex. 11.
[51] Defs.' Ex. 7.
[52] *Id.*
[53] *Id.*
[54] ECF No. 110 at 101-107.
[55] *Id.* at 11.

jurisdiction in accordance with Southern District of Texas General Order 2012-6.[56]   The determination and dischargeability of Plaintiffs' tax liability constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (I), and (O).   Therefore, this Court holds constitutional authority to enter appropriate orders and judgments.[57]   Finally, venue is governed by 28 U.S.C. §§ 1408, 1409.  Venue is proper because the Court presided over the underlying bankruptcy cases.

**b.      Determination of Tax Pursuant to 11 U.S.C. § 505.**

A bankruptcy court's power to determine tax liability is set forth in 11 U.S.C. § 505(a), which provides in pertinent part:

§ 505.  Determination of tax liability

(a)(1)  Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

The Court has discretion to determine the amount or legality of any tax, any fine or penalty relating to a tax allegedly owed by Plaintiffs to the IRS.[58]   The IRS maintains that in addition to not being dischargeable, Plaintiffs' tax liabilities should be determined as follows:

(1) James Ivison's Trust Fund Penalty Recovery should be determined to be $566,373.77 plus interest accruals;[59]

(2) James Ivison's 1040 tax liability for tax year 2011 should be determined to be $308,750.87 plus unassessed accruals;

(3) Anita Ivison's Trust Fund Penalty Recovery should be determined to be $566,303.77 plus

---

[56] *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[57] *Wellness Intern. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015); *Stern v. Marshall*, 564 U.S. 462 (2011).
[58] *See Luongo v. Luongo* (*In re Luongo*), 259 F.3d 323, 330 (5th Cir. 2001) ("The bankruptcy court's ability to abstain is premised on Congress' use of the word 'may' in § 505.").
[59] In addition to the assessments made, Defendants also assert that Plaintiffs owe an undetermined amount of interest and assessments.  However, Defendants provided no evidence as to these undetermined amounts on either the Trust Fund Penalty Recover or the 1040 tax liabilities.   To the extent that Defendants request interest based on an undeterminable amount, the Court shall abstain from such ruling.

interest accruals;

(4) Anita Ivison's 1040 tax liability for tax year 2011 should be determined to be $308,750.87 plus unassessed accruals; and

(5) Anita Ivison's 1040 tax liability for tax year 2012 should be determined to be $6,238.00 plus unassessed accruals.[60]

Plaintiffs assert that the Court should determine:

(1) that the Trust Fund liability assessments against both James and Anita Ivison pursuant to 26 U.S.C. §§ 3102(a), 3402(a), and 6672 should be $0.00;

(2) with the exception of the stipulation as to Anita Ivison's 2012 1040 tax liability in the amount of $6,238.00;[61] the joint individual income tax liabilities should be $0.00; and

(3) that any alleged federal tax liabilities are dischargeable pursuant to 11 U.S.C. § 523(a).[62]

The Court will take these in turn.

### 1.    Determination of Plaintiffs' Trust Fund Assessments

Sections 3102(a) and 3402(a) of the Internal Revenue Code ("*IRC*") requires employers to withhold federal income and social security taxes from the wages of employees.[63]  These sums are referred to as "trust funds" because the IRC provides that the monies are deemed to be "a special fund [held] in trust for the United States."[64]  The trust funds are remitted to the government on a quarterly basis and are for the exclusive use of the United States.[65]

When net wages are paid to the employee, the taxes—that were or should have been withheld—are credited in full to the employee, regardless if they are never remitted to the government.[66]  Unless the IRS can collect these taxes from the employer, the revenues are

---

[60] *See generally* ECF No. 126; Defs.' Exs. 8, 10.
[61] *See* ECF No. 110 at 63–64.
[62] *See generally* ECF No. 110.
[63] *See* 26 U.S.C. §§ 3102(a), 3402(a); *see also Slodov v. United States*, 436 U.S. 238, 242–43 (1978).
[64] 26 U.S.C. § 7501(a).
[65] *See* 26 U.S.C. §§ 3102(b), 3403, 7501(a).
[66] *Slodov*, 436 U.S. at 243–45.

forever lost to the government.[67]   To combat this, § 6672(a)[68] provides the IRS with a mechanism by which it may collect the taxes withheld and protect itself against such losses.[69] That section imposes a penalty[70] on a "person required to collect, truthfully account for, and pay over any tax" who willfully fails to do so.[71]

Thus, liability under § 6672(a) is imposed only on (1) a Responsible Person who has (2) willfully failed to perform their duty to collect, truthfully account for, or pay over such taxes.[72] "Person"—as defined by the Internal Revenue Code—includes "an officer or employee of a corporation . . . who as such officer [or] employee . . . is under a duty" to collect, account for, or pay over the withheld tax.[73]   This is known as the "Responsible Person."[74]   A person need not engage in all three of the activities listed in the statute to be held liable; involvement in any of the three named activities will suffice.[75]   Here, both parties stipulated that Plaintiffs are Responsible Persons under § 6672(a).[76]   The remining issue for the Court to determine is

---

[67] *Lencyk v. I.R.S.*, 384 F. Supp. 2d 1028, 1033 (W.D. Tex. 2005).
[68] 26 U.S.C. § 6672(a) provides in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

[69] *Lencyk*, 384 F. Supp. 2d at 1033.
[70] The Fifth Circuit has held that although § 6672(a) is classified as a penalty, the liability that is imposed is not penal in nature since it "brings to the government only the same amount to which it was entitled by way of the tax." *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir. 1970).   In other words, the government only collects the taxes due, not both the taxes due and an additional penalty equal to the amount of the taxes.   Therefore, § 6672 " 'is simple a means of ensuring that the tax which is unquestionably owed the Government is paid.' "   *Id.* (quoting *Botta v. Scanlon*, 314 F.2d 392, 393 (2d Cir. 1963)).
[71] 26 U.S.C. § 6672(a); *Barnett v. I.R.S.*, 988 F.2d 1449, 1453 (5th Cir. 1993).
[72] *Turnbull v. U.S.*, 929 F.2d 173, 178 (5th Cir. 1991).
[73] 26 U.S.C. § 6671(b).
[74] *Barnett*, 988 F.2d at 1453 n.6.
[75] *Slodov*, 436 U.S. at 250.
[76] ECF No. 110 at 91.

whether Plaintiffs willfully failed to perform their duty to collect, truthfully account for, or pay over trust fund taxes to the Government, an issue which Plaintiffs dispute.

At trial, the IRS promulgated IRS Form 4340–Certificates of Assessments and Payments for SHS' Quarterly Federal Tax Return (Form 941), which stated that:

(1) James Ivison's aggregate Trust Fund Recovery Penalty liability for the tax quarters ending March 31, 2011, June 30, 2012, September 30, 2012, and March 31, 2013 through December 31, 2013 assessed at $566,373.77;[77] and

(2) Anita Ivison's aggregate Trust Fund Recovery Penalty liability for the tax quarters ending March 31, 2011, June 30, 2012, September 30, 2012, and March 31, 2013 through December 31, 2013 assessed at $566,303.77.[78]

IRS Form 4340 constitutes valid evidence of a taxpayer's assessed liabilities,[79] and are presumed correct; the taxpayer carries the burden of proving those determinations wrong.[80]

At trial, Anita Ivison testified that between July and August of 2013, SHS paid approximately $320,000 to the IRS for payroll taxes.[81]   In their post-trial brief, Plaintiffs maintain that because only $106,000.00 is reflected in the IRS 4340 forms, Plaintiffs are entitled to a credit of approximately $214,000.00[82]   Aside from Plaintiffs' self-serving testimony, Plaintiffs failed to bring forth any evidence that any deposits in the aggregate of approximately $320,000.00 was ever tendered to the IRS between July and August of 2013.  The only evidence that clearly identifies a check from SHS to the IRS is in the amount of $145,207.60, dated August 8, 2013.[83]   That check made reference to payment for "Various Qtrs. 941/940."[84] However, the only IRS 4340 forms in evidence relate to Form 941, which reflect SHS's quarterly

---

[77] Defs.' Ex. 11.
[78] Defs.' Ex. 9.
[79] *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992); *Perez v. United States*, 312 F.3d 191, 195 (5th Cir. 2002).
[80] *Welch v. Helvering*, 290 U.S. 111, 115 (1933).
[81] *See* ECF No. 110 at 161; *see also* ECF No. 125 at 15.
[82] *See* ECF No. 125 at 15.
[83] Pls.' Ex. 9.
[84] *Id.*

federal tax return.[85]   Form 940 is noticeably absent from the evidence.   Without definitive evidence, the Court cannot be certain as to what happened to the alleged $214,000.00  As such, Plaintiffs failed to bring forth sufficient evidence demonstrating that the IRS' determinations were wrong.   Therefore, the Court finds that the amounts of $566,373.77 and $566,303.77 as described in IRS Forms 4340 are properly assessed.   The question then turns to whether Plaintiffs willfully failed to perform their duty to collect, truthfully account for, or pay over trust fund taxes to the Government.

As previously noted, Plaintiffs stipulated that they were Responsible Persons as that term is defined in the Internal Revenue Code.[86]   Once a court has determined that an individual is a Responsible Person under § 6672, that person bears the burden of proving they did not willfully fail to collect, account for, or pay over trust fund taxes to the Government.[87]   Willfulness under § 6672(a) requires a voluntary, conscious, and intentional act, but not necessarily a bad motive or evil intent.[88]   In the Fifth Circuit, a Responsible Person who learns of the underpayment of taxes must use later-acquired unencumbered funds to pay the taxes; failure to do so constitutes willfulness.[89]   Funds are encumbered if they are subject to restrictions imposed by a creditor with an interest superior to the IRS that preclude the taxpayer from using the funds to pay the taxes.[90] The burden to prove that the funds deposited into the company's bank were "encumbered" falls on Plaintiffs.[91]   Delegation of a duty to pay payroll taxes in and of itself does not release a

---

[85] *See, e.g.*, Defs.' Ex. 4.
[86] 26 U.S.C. § 6671(b).
[87] *See Morgan v. United States*, 937 F.2d 281, 286 (5th Cir. 1991) ("The responsible person bears the burden of proving [the] actions [taken] were not willful.") (citations omitted).
[88] *See Gustin v. U.S.I.R.S.*, 876 F.2d 485, 492 (5th Cir. 1989); *Morgan*, 937 F.2d at 285–86.
[89] *Logal v. U.S.*, 195 F.3d 229, 232 (5th Cir. 1999); *see also Morgan*, 937 F.2d at 285–86; *Wood v. U.S.*, 808 F.2d 411, 415 (5th Cir. 1987); *Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir. 1979).
[90] *Logal*, 195 F.3d at 232; *Barnett v. I.R.S.*, 988 F.2d 1449, 1458 (5th Cir. 1993).
[91] *Barnett*, 988 F.2d at 1458.

Responsible Person from the issue as to willfulness.[92]

In *Mazo v. U.S.*, the Fifth Circuit affirmed a district court's ruling holding that officers who signed one or more checks paying private creditors in preference to the government while another officer actually knew that the taxes were unpaid, yet took no action, was willful conduct.[93]  "[O]nce they were aware of the liability to the government, they were under a duty to ensure that the taxes were paid before any payments were made to other creditors."[94]  Here, the evidence confirms that Plaintiffs first became aware of the unpaid employment tax liability midway through 2011:

> Interrogatory No. 3: State when you first knew that [SHS] had unpaid payroll taxes for any time period.
> ANSWER: During mid-2011.[95]

Plaintiffs' testimony corroborated their responses to the interrogatories:

> *As to James Ivison*:
> Q: When did you first learn that [SHS] had unpaid payroll taxes for any time period?
> A: I'm going to say latter part of 2011, 2012.
> Q: Okay.  Do you remember answering before when I sent you these interrogatories mid-2011?
> A: That's –
> Q: So it's possible mid-2011?
> A: Possible (indisc.).[96]
>
> *As to Anita Ivison*:
> Q: Mr. Ivison testified that, in approximately – mid-2011 was the first time that he had any awareness that there was any kind of potential tax issues of any nature with – regarding [SHS].  What about you? When did you first become aware of any issues with them?
> A: At that same time.[97]
>
> . . .

---

[92] *See Mazo*, 591 F.2d at 1155.
[93] *Id.* at 1156–57.
[94] *Id.* at 1157.
[95] Defs.' Ex. 14 at 177.
[96] ECF No. 110 at 120–21.
[97] ECF No. 110 at 134.

> Q: When – okay, so you said you first learned of the unpaid withholding taxes around the same times as your husband in 2011, correct?
> A: 2011, 2012; I don't know the exact year.
> Q: Okay, but you did testify it was the same time your husband learned?
> A: Yes.[98]

The Court finds that Plaintiffs became aware of their unpaid payroll taxes beginning in mid-2011.  It was at that point that Plaintiffs were under a duty to ensure that the employment taxes were paid before any payments were made to other creditors, or to demonstrate that the funds were unencumbered.[99]

After learning of the unpaid withholding taxes in mid-2011, Plaintiffs continued to operate SHS, sign checks, pay wages, and authorize payments for SHS's payees other than the IRS:[100]

> Request for Admission No. 24 & 25: Admit that James Ivison/Anita Ivison signed checks or authorized payments for [SHS] to payee(s) other than the IRS after [they] knew that [SHS] had unpaid federal withholding taxes.
> ANSWERS: Admitted.[101]
>
> *As to James Ivison*:
> Q: Okay, after first learning of the unpaid payroll taxes of Hydraulic whenever in 2011, after that date you continued to receive a salary, correct?
> A: Intermittently, yes.
> Q: Would that have been $2,884 a week?
> A: On the weeks I got paid, yes.
> Q: Okay, and your salary at [SHS] was $150,000, correct?
> A: Yes, sir.
> Q: And the only people that could sign checks for [SHS] were you and your ex-wife, correct?
> A: No.
> Q: Who else could sign checks?
> A: Rose [Paredes].
> Q: Okay, so you, your ex-wife, and Rose.
> A: Correct, yes, sir.[102]

---

[98] ECF No. 110 at 140.
[99] *See Mazo*, 591 F.2d at 1157; *Barnett*, 988 F.2d at 1458.
[100] *See* Defs.' Ex. 7; Defs.' Ex. 15 at 188.
[101] Defs.' Ex. 15 at 188.
[102] ECF No. 110 at 122–23.

As noted above, delegation of the duty to pay payroll taxes to Rose Paredes did not release Plaintiffs from their obligations to collect, truthfully account for, or pay over trust fund taxes to the Government.[103]   Plaintiffs were aware that withholding taxes had not been paid but nevertheless continued to sign and issue checks to creditors other than the IRS.  Plaintiffs further failed to carry their burden in proving that the funds used were encumbered under § 6672.  As such, the Court finds that Plaintiffs' actions in signing checks, paying wages, and authorizing payments for SHS to payees other than the IRS all while aware that SHS had unpaid federal withholding taxes were willful and in violation of 26 U.S.C. § 6672(a).

Plaintiffs use *Slodov v. U.S.*[104] to dispute the allegations that they willfully failed to perform their duty to collect, truthfully account for, or pay over trust fund taxes to the Government.[105]  *Slodov* was a 1978 Supreme Court case that held that the government could not hold a person accountable under § 6672 if the only company funds available to pay withholding taxes over to the Government were funds acquired after the party assumed Responsible Person status within the corporation.[106]  *Slodov's* holding regarding liability is limited to the situation of an individual *becoming* a Responsible Person after those taxes are payable and trust funds have been dissipated.[107]  Regarding individuals who are Responsible Persons both before and after withholding tax liability accrues—as Plaintiffs were in this case—there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that

---

[103] *See Mazo*, 591 F.2d at 1155.
[104] 436 U.S. 238 (1978).
[105] ECF No. 127.
[106] *Slodov*, 436 U.S. at 253–54.
[107] *See Mazo*, 591 F.2d at 1157 (emphasis added).

obligation; failure to do so when there is knowledge of the liability—just as it was here—constitutes willfulness under § 6672.[108]

Plaintiffs lastly assert a reasonable cause defense to the § 6672 action, which would excuse one's failure to collect, account for, or pay over withholding taxes.[109]  The Fifth Circuit has consistently held that the reasonable cause defense to a § 6672 action is exceedingly limited.[110]  Although the Fifth Circuit has recognized conceptually that a reasonable cause may militate against a funding of willfulness, no taxpayer has successfully used that defense.[111]  The Fifth Circuit further emphasized that no such defense may be asserted by a Responsible Person who knew that the withholding taxes were due, but who made a conscious decision to use corporate funds to pay creditors other than the government.[112]  Here, Plaintiffs consciously made a decision to use funds to pay creditors other than the government, even though they knew that the withholding taxes had not been paid.  Thus, because Plaintiffs knew that the withholding taxes were due but still failed to collect, account for, or pay over the withholding taxes, Plaintiffs' reasonable cause defense fails.

Because James Ivison was a Responsible Person and failed to collect, account for, or pay over withholding taxes, pursuant to IRS Form 4340, the Court determines that James Ivison's aggregate Trust Fund Recovery Penalty liability for the tax quarters ending March 31, 2011, June 30, 2012, September 30, 2012, and March 31, 2013 through December 31, 2013 is $566,373.77.

---

[108] *See also Howard v. United States*, 711 F.2d 729, 735 (5th Cir. 1983) ("Howard himself signed 36 checks made out to other creditors after he knew that Eden owed taxes to the IRS.  We hold that under the rule set forth in *Mazo*, Howard's conduct was willful as a matter of law."); *Arriondo v. United States*, 196 F. Supp. 3d 708, 721–23 (S.D. Tex. 2016) ("[A] responsible person who learns of the underpayment of taxes must use later-acquired unencumbered funds to pay the taxes; failure to do so constitutes willfulness.").
[109] *See* ECF Nos. 1, 127 at 8.
[110] *Logal v. U.S.*, 195 F.3d 229, 233 (5th Cir. 1999).
[111] *Id.*
[112] *Id.*; *see also Newsome v. U.S.*, 431 F.2d 742, 747 n.11 (5th Cir. 1970).

Because Anita Ivison was a Responsible Person and failed to collect, account for, or pay over withholding taxes, pursuant to IRS Form 4340, the Court determines that Anita Ivison's aggregate Trust Fund Recovery Penalty liability for the tax quarters ending March 31, 2011, June 30, 2012, September 30, 2012, and March 31, 2013 through December 31, 2013 is $566,303.77. The Court now turns to individual income tax liability determinations.

### 2.    Determination of Plaintiffs' Individual Income Tax Liabilities

For tax year 2011, Plaintiffs have each been assessed $238,574.00 in individual income tax liabilities, and an additional $57,256.96 in associated penalties ($47,714.00 on June 4, 2013, and $9,542.96 on November 4, 2013) and $12,919.91 in associated interest ($9,623.92 on June 4, 2013, and $3,295.99 on November 4, 2013).[113]   The aggregate tax liability totals $308,750.87, joint and severable for each of the Plaintiffs.  These assessments are supported by (1) the August 5, 2015 IRS Form 4340 Certificate of Official Record;[114] and (2) the agreed Income Tax Examination Changes ("*Form 4549*") signed by James Ivison on April 12, 2013, and Anita Ivison on April 22, 2013.[115]   The Form 4549 does not reflect the November 4, 2013 assessments on account they were not assessed yet.  The $308,750.87 assessment is made pursuant to the April 2013 IRS audit adjustment, which held that there was (1) an agreed upon $300,000.00 increase in officers' compensation; and (2) an agreed $547,689.47 disallowed pass-through loss from SPS to SHS.[116]   The Court will discuss these two adjustments in turn.

### A.    Increase in Officers' Compensation

---

[113] Defs.' Ex. 35.
[114] *Id.*
[115] Defs.' Ex. 46.
[116] *See* Defs.' Exs. 27, 35, 46.

The IRS determined that Plaintiffs had $300,000 in unreported officers' compensation for tax year 2011.[117]  Specifically, the IRS determined that

> The corporation wrote checks to the taxpayers, transferred amounts to the taxpayers' personal accounts, and made payments to the taxpayers in 2010 and 2011 in cumulative amounts greater than the wage amount reported to the taxpayers in 2010 and 2011.[118]

Plaintiffs agreed to the $300,000 adjustment when they signed Form 4549 in April 2013.[119] Here, Plaintiffs bear the burden of proving that the IRS erred in computing the additional income determination.[120]  To do this,  Plaintiffs utilize IRS Agent Jonathan Meek's testimony to dispute the $300,000.00 determination by the IRS.  Specifically, Plaintiffs pointed to Agent Meek's testimony regarding irregularities with W-2 tax forms for Rose Paredes and her son,[121] irregularities with checks to Rose Paredes that were in excess of the W-2 amount for that year,[122] and irregularities between hard copies of expense categories and the electronic copies.[123] However, Plaintiffs' argument fails to consider the fact that not only did Agent Meeks previously discuss these irregularities with James Ivison,[124] Plaintiffs still agreed to Agent Meeks' proposed adjustments, indicating: "[Plaintiffs] agreed to adjustments, will set meeting with Collections on receipt of first notice of $1MM deficiency and penalties.  Taxpayer expects significant collections in related solely owned business in 90 days."[125]  This is also corroborated by several

---

[117] Defs.' Exs. 26, 46.
[118] Defs.' Ex. 26.
[119] *See* Defs.' Ex. 46.
[120] *See Mladinich v. United States*, 417 F.2d 700, 702 (5th Cir. 1969).
[121] ECF No. 110 at 168.
[122] *Id.*
[123] *Id.* at 169.
[124] *Id.* at 194.
[125] *Id.* at 182; Defs.' Ex. 24.

other documents Plaintiffs signed, again indicating their agreement to the IRS' proposed adjustments.[126]

Further, Plaintiffs failed to secure Rose Paredes' testimony, who undoubtedly would have been an important witness. Without more, the Court finds that Plaintiffs failed to carry their burden in proving that the IRS erred in computing the additional income determination. As such, the Court finds that the $300,000 increase in officers' compensation is appropriate.

### B.     Plaintiffs' Pass-Through Losses

At issue here is whether Plaintiffs had a sufficient basis to offset the agreed-to tax year 2011 liabilities in the amount of $659,080.[127] If in fact it is proven that Plaintiffs had a sufficient basis to offset, Plaintiffs' taxable income may well be significantly less than what the adjusted taxable income states.

A small business corporation that elects Subchapter S is not subject to corporate income tax; rather, it is taxed pro rata to its shareholders—a method commonly known as flow-through taxation.[128] When a Subchapter S corporation suffers a net operating loss, the loss is passed through to the shareholders, each of whom may use their share of the loss to offset other personal income.[129] This offset is limited to (i) a shareholder's adjusted basis in his Subchapter S stock; and (ii) the adjusted basis of any indebtedness of the corporation to that individual.[130]

While "adjusted basis" is not defined in relation to that section, the court in *Wheat v. United States*[131] concluded that the concept of adjusted basis of indebtedness embodied in the

---

[126] *See* Defs.' Exs. 25, 26.
[127] *See* Pls.' Exs. 25, 26.
[128] 26 U.S.C. § 1366; *Underwood v. C.I.R.*, 535 F.2d 309, 310 (5th Cir. 1976).
[129] 26 U.S.C. § 1366.
[130] 26 U.S.C. § 1366(d)(1)(A), (B).
[131] 353 F. Supp. 720 (S.D. Tex. 1973).

statute "was intended to be comparable to actual capital investment by the shareholders."[132]

Corroborating this is *Broz v. Comm'r*,[133] stating:

> First, we state the general rules governing when a shareholder in an S corporation is entitled to deduct losses the S corporation sustained. A shareholder of an S corporation can directly deduct his or her share of entity-level losses in accordance with the flow through rules of subchapter S. *See* § 1366(a). The losses cannot exceed the sum of the shareholder's adjusted basis in his or her stock and the shareholder's adjusted basis in any indebtedness of the S corporation to the shareholder. *See* § 1366(d)(1)(A), (B). This restriction applies because the disallowed amount exceeds the shareholder's economic investment in the S corporation, and because of the limited liability accorded to S corporations, the amount does not have to be repaid. The shareholder bears the burden of establishing his or her basis.[134]

A shareholder in an S corporation must make an economic outlay to increase his stock basis.[135] For example, a shareholder who merely guarantees a corporate debt who has not directly advanced funds to the corporation may not claim an increased basis in the corporation absent proof that the corporate debt, in substance, runs to him.[136] A taxpayer must also carry their evidentiary burden and produce evidence, documentary or otherwise, to corroborate their claim that deposited funds were intended to be capital; without more, it is impossible for the Court to determine whether personal deposits were intended as a capital contribution.[137] Lastly, 26 U.S.C. § 1366(d)(1) limits a shareholder's pass-through loss to that shareholder's adjusted basis for that taxable year.[138] While § 1366(d)(2) suspends unrecognized losses, allowing them to be carried forward into a subsequent year in which sufficient basis exists, that recognition is

---

[132] *Wheat*, 353 F. Supp. at 722.

[133] 137 T.C. 46, 60 (2011).

[134] *Id.*

[135] *See Harris v. United States*, 902 F.2d 439, 443 (5th Cir. 1990); *Underwood*, 535 F.2d at 311–12.

[136] *See Harris*, 902 F.2d at 443–45.

[137] *Powers v. C.I.R.*, No. 12634-10, 2013 WL 2338502, at *12, 105 T.C.M. (CCH) 1798 (T.C. May 29, 2013).

[138] *See also Weisberg v. C.I.R.*, No. 21157-07, 2010 WL 1027519, 99 T.C.M. (CCH) 1223 (T.C. Mar. 22, 2010) (holding that a shareholder's guarantee of his S corporation's line of credit did not increase his basis in the S corporation as required for the shareholder to deduct flow-through losses from the S corporation for that taxable year, where the shareholder did not incur a personal loan to pay off the line of credit until the subsequent tax year).

only made in the subsequent year in which there is adequate basis to absorb the loss, and not in the years that a taxpayer only elects to claim the deduction.[139]

Here, Plaintiffs agreed to and acknowledged that they had a $659,080.00 loss for SPS in tax year 2011, and a $560,346.00 loss for SHS in tax year 2011.[140]  Plaintiffs' further agreed to and acknowledged in their individual income report that they had a loss of $547,689.47 from their Subchapter S corporations for tax year 2011.  At trial James Ivison testified that Plaintiffs received approximately $800,000 from the sale of SPS in early 2012[141] with which they invested into SHS around summer of 2013,[142] providing them sufficient basis against which to apply against their agreed audit-determined tax year 2011 liabilities.[143]  This alone, is not enough to overcome their burden of producing evidence, documentary or otherwise, to corroborate this claim that such deposited funds were intended to be capital—besides Plaintiffs own testimony.[144]  Nevertheless, assuming arguendo that Plaintiffs provided sufficient evidence to establish basis, that basis would have been realized in tax year 2013, and would not be relevant to the issue of Plaintiffs agreed-to audit adjustment of $547,689.47 for tax year 2011.[145]  Therefore, the Court finds that Plaintiffs failed to carry their evidentiary burden of establishing an $800,000.00 basis for their pass-through loss for tax year 2011.

As such, pursuant to the August 5, 2015 IRS Form 4340 Certificate of Official Record, the Court determines that Plaintiffs' individual income tax liability for tax year 2011 is $308,750.87 joint and severable for each of the Plaintiffs, and Anita Ivison's individual income tax liability for tax year 2012 is $6,238.00, as previously stipulated.

---

[139] *See Barnes v. C.I.R.*, 712 F.3d 581 (D.C. Cir. 2013).
[140] Pls.' Exs. 25, 26, 27.
[141] ECF No. 110 at 125.
[142] *Id.* at 50-51.
[143] *See id.* at 50, 51; Pls.' Ex. 25.
[144] *Powers v. C.I.R.*, No. 12634-10, 2013 WL 2338502, at *12, 105 T.C.M. (CCH) 1798 (T.C. May 29, 2013).
[145] *See Barnes v. C.I.R.*, 712 F.3d 581 (D.C. Cir. 2013); Defs.' Exs. 25, 26, 46.

c.      **Dischargeability Pursuant to 11 U.S.C. § 523(a)**

Plaintiffs seek a discharge of their (1) individual tax liabilities; and their (2) trust fund recovery liabilities.[146]  Generally, at the conclusion of a chapter 7 proceeding, a debtor is granted a discharge.[147]  However, some claims—like certain tax obligations—are specifically excepted from discharge.[148] These tax exceptions are set forth within § 523(a)(1), which states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>> (1) for a tax or a customs duty—
>>> (A) of the kind and for periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
>>> (B) with respect to which a return, or equivalent report or notice, if required—
>>>> (i) was not filed or given; or
>>>> (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
>>> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax"[149]

**1.**      The Court will discuss the dischargeability of Plaintiffs' tax liabilities in turn.**Plaintiffs' Individual Tax Liabilities**

**A.**      **Section 523(a)(1)(A)**

Section 523(a)(1)(A) provides exceptions to discharge pursuant to § 507(a)(3) and 507(a)(8), of which only the latter section is relevant to the Court.  Section 507(a)(8)(A) states:

> **(a)** The following expenses and claims have priority in the following order:
>> **(8)** Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
>>> **(A)** a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—

---

[146] ECF No. 1.
[147] *See* 11 U.S.C. § 727.
[148] *See, e.g.,* 11 U.S.C. § 523(a)(1).
[149] 11 U.S.C. § 523(a)(1).

**(i)** for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

**(ii)** assessed within 240 days before the date of the filing of the petition, exclusive of—

**(I)** any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and

**(II)** any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days; or

**(iii)** other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

### i.    Section 507(a)(8)(A)(i): 3-Year Rule

The first subset under § 507(a)(8)(A) identifies the three-year rule, which—pursuant to § 523(a)(1)(A)—excepts from discharge any income taxes relating to a tax year in which the tax return was due within three years of the bankruptcy filing, including extensions.[150]  In this case, recall that Anita Ivison filed for bankruptcy relief on December 17, 2013 and filed her 2011 individual federal income tax return on December 3, 2012.[151]  Anita Ivison's 2011 individual federal income tax return for 2011 was due on April 15, 2012.[152] Anita Ivison's 2012 federal income tax return was not entered into evidence as the parties already stipulated as to her tax liabilities for tax year 2012.  Regardless, Anita Ivison's 2012 federal income tax return would have been due no earlier than April 15, 2013.

James Ivison filed for bankruptcy relief on December 17, 2013 and filed his 2011 individual federal income tax return on December 3, 2012.[153]  James Ivison's 2011 individual

---

[150] 11 U.S.C. § 507(a)(8)(A)(i); *see also Young v. United States*, 535 U.S. 43–44 (2002).

[151] *See* Pls.' Ex. 46.

[152] There is no evidence in the record that Anita Ivison sought and obtained any extensions on filing her 2011 individual federal income tax return.

[153] *See* Pls.' Ex. 46.

federal income tax return for 2011 was due on April 15, 2012.[154]

Plaintiffs' due dates for their 2011 and 2012 tax returns, April 15, 2012 and April 15, 2013, respectively, easily fall within three years of their December 17, 2013 bankruptcy filings.[155]   Therefore Plaintiffs' individual tax liabilities for 2011 in the amount of $308,750.87 and Anita Ivison's individual tax liability for 2012 in the amount of $6,238.00 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(A), which makes reference to § 507(a)(8)(A)(i).

Failing to overcome the 3-Year Rule alone is reason enough to except Plaintiffs' individual income tax liabilities from discharge.[156]   Nevertheless, leaving no stone unturned, the Court will press on and analyze dischargeability of Plaintiffs' personal income tax liabilities pursuant to the remaining portions of the applicable statutes.

### ii.    Section 507(a)(8)(A)(ii) 240 Day Rule

Section 507(a)(8)(A)(ii) requires that the taxpayer identify exactly when the tax for a particular tax year was actually assessed,[157] or posted on the IRS' books.  Typically, the income taxes resulting from a filed tax return are assessed (or put on IRS' books) at or near the time the return is received by the IRS.  Taxes assessed within this 240-day period of filing for bankruptcy are excepted from discharge.[158]

As stated above, Anita Ivison filed for bankruptcy relief on December 17, 2013, filed her 2011 federal income tax return on December 3, 2012, and such return was assessed by the IRS

---

[154] There is no evidence in the record that James Ivison sought and obtained any extensions on filing his 2011 individual federal income tax return

[155] *See* Case No. 13-37740, ECF No. 1; Case No. 13-37732, ECF No. 17.

[156] Note that both §§ 507(a)(8)(A), 523(a)(1) are denoted by the conjunction "or."

[157] The assessment of a tax is essentially a bookkeeping notation, and is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls.  *In re Hosack*, 282 F. App'x. 309, 313 (5th Cir. 2008) (citing *Laing v. United States,* 423 U.S. 161, 170 n.13 (1976)).

[158] *See* 11 U.S.C. § 507(a)(8)(A)(ii)

on June 4, 2013, well within the 240-day prohibition.[159]  Anita Ivison's 2012 federal income tax return, on the other hand, was not entered into evidence as the parties already stipulated as to her tax liabilities for tax year 2012.  Nevertheless, the earliest that Anita Ivison's 2012 income tax return would have been due would have been April 15, 2013 which means that the earliest it could have been assessed would have been April 15, 2013 if it was timely filed, or later than that if it was not.  Either way without any additional evidence in the record the Court is unable to determine whether Anita Ivison's 2012 taxes were assessed within 240 days of her bankruptcy filing.  It matters not as the Court has already determined that Anita Ivison's 2012 individual tax return was due within three years of her bankruptcy filing and such tax liability is excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(A), which makes reference to § 507(a)(8)(A)(ii).

Also stated above, James Ivison filed for bankruptcy relief on December 17, 2013, filed his 2011 federal income tax return on December 3, 2012, and such return was assessed by the Internal Revenue Service on June 4, 2013, well within the 240-day prohibition.[160]

Plaintiffs' 2011 individual tax returns were assessed within 240 days of their respective bankruptcy filings.  Therefore, assuming arguendo that § 507(a)(8)(A)(i) does not apply, §507(a)(8)(A)(ii) does apply, and Plaintiffs' individual tax liabilities in the amount of $308,750.87 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(A), which makes reference to § 507(a)(8)(A)(ii).  Anita Ivison's individual tax liability for 2012 in the amount of $6,238.00 was already held to be excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(A), which makes reference to § 507(a)(8)(A)(i).

### B.      Section 523(a)(1)(B): 2-Year Rule

Section 523(a)(1)(B) provides that tax debts are not dischargeable for any tax year that

---

[159] *See* Pls.' Ex. 46.
[160] *See id.*

the taxpayer failed to file a return, or filed a return after the date on which such return was due under applicable law or under any extensions, and was filed within two years before the date of the filing of the petition.[161]  No tax return equals no discharge for the corresponding tax year.  In *In re McCoy*, the Fifth Circuit held that late-filed returns cannot be considered "returns" for bankruptcy discharge purposes under the plain language and hanging paragraph[162] of § 523, unless it falls within the safe harbor provision of 26 U.S.C. § 6020(a).[163]  Here, Plaintiffs provided no evidence that they sought or obtained an extension for the filing of their 2011 federal income tax returns, or whether the safe harbor provision of 26 U.S.C. § 6020(a) is applicable.  The only evidence in the record reflects that the 2011 tax returns were filed after the April 15, 2012 due date.  Additionally, there is no evidence as to the filing date of Anita Ivison's 2012 federal income tax return.  At a minimum such return would have been due no earlier than April 15, 2013 well within the 2-year limitation.

Therefore, under *In re McCoy*, Plaintiffs' 2011 individual federal income tax returns and Anita Ivison's 2012 individual federal tax return were either not "returns" for purposes of § 523(a)(*) or were returns for purposes of § 523(a) but were filed within two years before Plaintiffs' bankruptcy petitions.  Either way, Plaintiffs' joint and several 2011 individual tax liability in the amount of $308,750.87 and Anita Ivison's 2012 individual tax liability in the amount of $6,238.00 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B).

### C.    Section 523(a)(1)(C): No Fraud Rule

The Bankruptcy Code provides a discharge exception in § 523(a)(1)(C) against taxpayers

---

[161] 11 U.S.C. § 523(a)(1)(B).  *See also In re McCoy*, 666 F.3d 924 (5th Cir. 2012) (discussing definition of returns with respect to dischargeability).
[162] *See* 11 U.S.C. § 523(a)(*).
[163] *See generally In re McCoy*, 666 F.3d 924.

who file fraudulent tax returns.[164]   Section 523(a)(1)(C) also excepts from discharge any debt with respect to which the taxpayer "willfully attempted in any manner to evade or defeat such tax.[165]   The statutory phrase "willfully attempted to evade" means a voluntary, conscious, or intentional attempt to evade a tax, whether the evasion was through overt actions or omissions.[166] Willfully attempting to evade taxes requires the misconduct and an intention to evade.[167]   The intention requirement requires that the taxpayer had a duty to pay a tax, knew of the duty, and intentionally and voluntarily evaded such duty.[168]   Here, no evidence was presented to the Court that Plaintiffs' 2011 tax returns or Anita Ivison's 2012 tax returns were fraudulently filed, or that Plaintiffs willfully attempted to evade or defeat such taxes. Thus, § 523(a)(1)(C) is not implicated.

Because Anita Ivison's 2011 and 2012 federal income tax returns (i) were due within three years of the filing of her bankruptcy petition; (ii) were assessed within 240 days before the date of the filing of her bankruptcy petition[169]; and (iii) were either considered not returns for purposes of § 523(a)(*) or were returns for purposes of § 523 but were filed within two years of the filing of Ms. Ivison's bankruptcy petition, Anita Ivison's 2011 and 2012 tax liabilities in the amount of $308,750.87 and $6,238.00, respectively, are excepted from discharge pursuant to 11 U.S.C. § 523(a).

Because James Ivison's 2011 federal income tax return (i) was due within three years of

---

[164] 11 U.S.C. § 523 (a)(1)(C).
[165] *Id.*
[166] *See In re Jones*, 116 B.R. 810 (Bankr. D. Kan. 1990); *In re Berzon*, 145 B.R. 247 (Bankr. N.D. Ill. 1992); *In re Mirulla*, 163 B.R. 912 (Bankr. D. N.H. 1994).
[167] *In re Fretz*, 244 F.3d 1323, 1326–29 (11th Cir. 2001).
[168] *See, e.g., Matter of Bruner,* 55 F.3d 195, 200 (5th Cir. 1995).
[169] Without any further evidence in the record, the Court was unable to determine whether Anita Ivison's individual 2012 federal income tax return was assessed within 240 days of the filing of her bankruptcy petition but determined that such taxes were nevertheless excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(A), which makes reference to § 507(a)(8)(A)(i).

the filing of his bankruptcy petition; (ii) was assessed within 240 days before the date of the filing of his bankruptcy petition; and (iii) was either considered not a return for purposes of § 523(a)(*) or was a return for purposes of § 523 but was filed within two years of the filing of Mr. Ivison's bankruptcy petition, James Ivison's 2011 tax liability in the amount of $308,750.87 is excepted from discharge pursuant to 11 U.S.C. § 523(a).

### D.  Plaintiffs' Trust Fund Liability

Lastly, § 507(a)(8)(C) applies to "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity."[170]  Courts have consistently held that § 507(a)(8)(C) applies to trust fund liability taxes, and in which this Court agrees.[171]  Because the Court found that Plaintiffs were Responsible Persons who failed to collect, account for, or pay over withholding trust fund taxes, Plaintiffs' trust fund liabilities in the amount of $566,373.77 for James Ivison and $566,303.77 for Anita Ivison are excepted from discharge pursuant to 11 U.S.C. § 523(a), which makes reference to § 507(a)(8)(C).

### III.        CONCLUSION

Pending before the Court is a complaint filed by James Ivison and Anita Ivison seeking determination of certain taxes pursuant to 11 U.S.C. § 505 and dischargeability of certain taxes pursuant to 11 U.S.C. § 523(a).  As set forth in this Court's Memorandum Opinion, the Court finds that:

1.    James Ivison's aggregate Trust Fund Recovery Penalty liability for the tax quarters ending March 31, 2011, June 30, 2012, September 30, 2012, and March 31, 2013 through December 31, 2013:

---

[170] 11 U.S.C. § 507(a)(8)(C).

[171] *See In re Johnson*, 283 B.R. 694, 706 (Bankr. N.D. Tex. 2000); *In re Paris*, 355 B.R. 860, 867 (Bankr. M.D. Fla. 2006), *aff'd*, 355 B.R. 867 (M.D. Fla. 2006), *aff'd*, 245 F. App'x 929 (11th Cir. 2007) (holding that § 507(a)(8)(C) applies to trust fund portion of payroll taxes); *In re Gust*, 229 B.R. 44, 46 (Bankr. S.D. Ga. 1998), *aff'd*, 239 B.R. 630 (S.D. Ga. 1999), *aff'd and adopted*, 197 F.3d 1112 (11th Cir. 1999) (holding that a trust fund liability tax is a tax that is required to be collected or withheld and for which the debtor is liable in whatever capacity).

      a.   is determined to be $566,373.77 pursuant to 11 U.S.C. § 505; and

      b.   is excepted from discharge pursuant to 11 U.S.C. § 523(a);

2.     James Ivison's individual federal income tax liability for tax year 2011:

      a.   is determined to be $308,750.87 pursuant to 11 U.S.C. § 505; and

      b.   is excepted from discharge pursuant to 11 U.S.C. § 523(a);

3.     Anita Ivison's aggregate Trust Fund Recovery Penalty liability for the tax quarters ending March 31, 2011, June 30, 2012, September 30, 2012, and March 31, 2013 through December 31, 2013:

      a.   is determined to be $566,303.77 pursuant to 11 U.S.C. § 505; and

      b.   is excepted from discharge pursuant to 11 U.S.C. § 523(a);

4.     Anita Ivison's individual federal income tax liabilities:

      a.   is determined to be $308,750.87 for tax year 2011 pursuant to 11 U.S.C. § 505;

      b.   is determined to be $6,238.00 for tax year 2012 as stipulated; and

      c.   are excepted from discharge pursuant to 11 U.S.C. § 523(a).

5.     Post Judgement Interest shall accrue at 0.22% until paid.

A Judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 04/23/2020.

Eduardo V. Rodriguez
United States Bankruptcy Judge